USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ___
DATE FILED: 1-5-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES TUROWSKI,
Plaintiff,

- against -

TRIARC COMPANIES, INC., et al.,

Defendants.

09 Civ. 3979 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff James Turowski ("Turowski") brought this action against defendants Triarc Companies, Inc. ("Triarc"); Peter W. May, President and Chief Operating Officer of Triarc, individually and in his official capacity ("May"); and John R. Bender, Corporate Director of Security for Triarc, individually and in his official capacity ("Bender") (collectively, "Defendants"), alleging that the Defendants failed to accommodate his disabilities and terminated his employment for discriminatory reasons in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12112(a), the New York State Human Rights Law (the "NYSHRL"), and the New York City Human Rights Law (the "NYCHRL"). Turowski has since withdrawn his claims against the individual defendants under the ADA

because the ADA does not cover claims against individuals.[1] Defendants now move for summary judgment (the "Motion") on Turowski's remaining claims pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). For the reasons listed below, the Court GRANTS Defendants' Motion.

## I. BACKGROUND[2]

Turowski began working for Triarc's corporate predecessor in 1986 at the Security Reception Desk of that company's corporate office. In June 2002, he interviewed with Bender and May for a position as May's security chauffeur, and May and Bender hired him. His responsibilities included driving May and his family and ensuring their safety. Turowski carried a firearm while on duty. He worked two days a week and was an alternate on a third day. However, due to the changing needs of the May family, he worked unpredictable and sometimes long hours, and received updates about the family's transportation needs throughout the day.

---

[1] For consistency, Defendants will be referred to here as "Defendants" for the entirety of the Decision and Order, even though Turowski's claims under the ADA are brought against Triarc only.

[2] The factual summary below is derived from the following documents and any exhibits and declarations attached thereto: Defendants' Statement under Local Rule 56.1 of the Local Rules for the Southern District of New York (Defendants' "Rule 56.1 Statement"), dated August 16, 2010, and Turowski's Rule 56.1 Statement, dated October 1, 2010. The Court will make no further citations to these sources unless otherwise specified.

On January 24, 2004, Turowski slipped on ice in his backyard and sustained a traumatic brain injury ("TBI"). As a result of this injury, Turowski suffered complete hearing loss in his left ear and partial hearing loss in his right ear, for which he now must wear a hearing aid. He also lost his sense of smell and became more susceptible to fatigue. Other effects of the TBI were that Turowski lost impulse control, mental flexibility, and all initiative. He became short tempered, lost his sense of time, and the ability to care. As a result, he had a different personality, became annoyed easily, often yelled, and developed difficulty with cognition. It also became challenging for Turowski to handle changes in his daily schedule. Nonetheless, during the time while Turowski was recovering from the TBI and was unable to work, Triarc held his job open for him.

Nine months after the accident, Turowski returned to work. Turowski and Defendants agreed it was best to phase him in slowly. He initially started working one day a week driving Bender, so that Bender could assess his progress and determine whether he could return to the security chauffeur position. After working one day a week for a trial period of one month, Turowski resumed driving for May

at his previous schedule of three days per week. Defendants did, however, limit Turowski's driving to five hours per day as much as possible due to his increased fatigue. Triarc assigned additional security chauffeurs to May to accommodate Turowski's reduced schedule. Defendants further state, though Turowski denies, that Defendants sent drivers out into the field to relieve Turowski if he was still driving when his shift was complete. Due to Turowski's difficulty hearing, Bender provided him with a BlackBerry so that he could communicate without speaking on the phone. Initially Turowski carried a firearm as he had prior to the accident. However, his doctor advised him that he should not carry a gun because the TBI likely affected his ability to think quickly and exercise appropriate judgment. Thus, Turowski stopped carrying a firearm when he drove May. Defendants state that Turowski resumed his pre-accident full-time schedule in or about April 2005, after Defendants received a letter from Turowski's doctor stating that he could return to work full-time. Turowski states in contrast that his employer increased his hours unilaterally, and that Turowski did not receive a letter so stating.

On at least two occasions, Turowski missed work without calling in to say that he was not going to come in that day. May was thus stranded without a security chauffeur. Following the second incident, on June 26, 2006, Bender assigned Turowski to pick up May's mother-in-law. Prior to Turowski's departure, Bender called Turowski into his office to speak with him. Defendants state that Bender wanted to discuss Turowski's missed day of work, while Turowski states that he did not know why Bender wanted to speak with him. Turowski did not go to speak with Bender, but told Bender that he would come speak with him after he had dropped off May's mother-in-law. After asking again that Bender come speak with Turowski, and after Turowski's repeated refusal, Bender fired Turowski. Turowski admits that he was not told that the reason he was being terminated had anything to do with his disability, nor did he ever hear anyone make any comments about his disability in relation to his employment.

## II. LEGAL STANDARD

### A. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a court should grant summary judgment if there is "no genuine issue as to any material fact." Fed. R. Civ. P.

56(c)(2). In determining whether disputed issues of material fact exist, a court must draw all reasonable inferences in favor of the non-moving party. See, e.g., Shapiro v. New York Univ., 640 F. Supp. 2d 411, 417-18 (S.D.N.Y. 2009) (citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"Employment discrimination cases raise special issues on summary judgment." Kenney v. New York City Dep't of Educ., No. 06 Civ. 5770, 2007 WL 3084876, at *3 (S.D.N.Y. Oct. 22, 2007). Specifically, employment discrimination cases that involve a dispute over the "employer's intent and motivation" may not be suitable for summary judgment. Id.; see also Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008). The Second Circuit has noted, however, that "summary judgment is ... available to defendants in discrimination cases." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation marks and citations omitted); see also Holcomb, 521 F.3d at 137 ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.").

B. LEGAL STANDARD FOR DISABILITY DISCRIMINATION

Section 102(a) of the ADA creates a private right of action for disability-based employment discrimination. See 42 U.S.C. § 12112. "[T]he legal standards for discrimination claims under the ADA and under New York state and city law are essentially the same." Konipol v. Restaurant Assocs., No. 01 Civ. 7857, 2002 WL 31618825, at *6 (S.D.N.Y. Nov. 20, 2002) (internal citations omitted). Thus, the Court will address the ADA, NYSHRL, and NYCHRL claims together.

Under the NYSHRL and NYCHRL an individual may be held liable as an aider and abettor of discriminatory practices once liability is established against the employer. See Sowemimo v. D.A.O.R. Sec., Inc., 43 F. Supp. 2d 477, 490-91 (S.D.N.Y. 1999). The ADA, unlike the NYSHRL and NYCHRL, does not permit the imposition of liability on individuals in their individual or representative capacities. See Carrasquillo v. City of New York, 324 F. Supp. 2d 428, 441 (S.D.N.Y. 2004).

A claim of disability discrimination under the ADA is governed by the three-step burden shifting analysis set out in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). A plaintiff must first establish a prima facie

case of unlawful discrimination. The burden then shifts to the defendant to rebut the prima facie case of discrimination by producing a legitimate, nondiscriminatory reason for the employment termination. The plaintiff then bears the ultimate burden of proving that the defendant's stated justification for termination was merely pretext and the real reason for the termination was discrimination. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-56 (1981).

1. Failure to Accommodate

A prima facie case for a failure to accommodate claim "requires a showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 183-84 (2d Cir. 2006) (quoting Rodal v. Anesthesia Gp. of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004)). "Employees are not entitled to hold out for the most beneficial accommodation, and [an] employer need not offer the accommodation that the employee prefers. Instead, when any reasonable

accommodation is provided, the statutory inquiry ends." Waltzer v. Triumph Apparel Corp., No. 09 Civ. 288, 2010 WL 565428, at *6 (S.D.N.Y. Feb. 18, 2010) (internal citations and quotations omitted). Additionally, "summary judgment may be granted where the proposed accommodation would omit an essential function of the job." Canales-Jacobs v. N.Y. State Office of Court Admin., 640 F. Supp. 482, 500 (S.D.N.Y. 2009).

2. Discriminatory Termination

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to" the "discharge of employees." 42 U.S.C. § 121112. In order to establish a prima facie case of discrimination under the ADA, the plaintiff must establish that: (1) the defendant is subject to the ADA; (2) he suffers from a qualifying disability; (3) he was otherwise qualified to perform the essential functions of his position with or without a reasonable accommodation; and (4) the defendant terminated plaintiff's employment under circumstances giving rise to a reasonable inference of discrimination because of his disability. See Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003).

3. Essential Function

The third element of the prima facie case of each type of discrimination alleged in this action requires that the plaintiff show that he is capable of performing the essential functions of his position. "Essential functions are defined under EEOC regulations to mean the fundamental duties to be performed in the position in question, but not functions that are merely marginal." Shannon, 332 F.3d at 100 (internal citations and quotation marks omitted). In determining whether a plaintiff could perform the essential functions of his position, "[a] court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." D'Amico v. City of New York, 132 F.3d 145, 151 (2d Cir. 1998). While a reasonable accommodation may include adjustments such as the modification of physical facilities, work schedules or equipment or job restructuring, reasonable accommodation does not mean the elimination of any of the position's essential functions. See Gilbert v. Frank, 949 F.2d 637, 642 (2d Cir. 1991) (citation omitted). If a plaintiff cannot meet his burden of proving that he can perform the essential functions of his position with or without reasonable accommodations, he

will be unable to establish a prima facie case of unlawful discrimination under the ADA. See Shepheard v. City of New York, 577 F. Supp. 2d 669, 679 (S.D.N.Y. 2008).

## III. DISCUSSION

### A. FAILURE TO ACCOMMODATE

Defendants assert that Turowski could not perform two essential functions of the chauffeur position even with accommodation and therefore that he fails to meet the third requirement of the prima facie case for a claim of failure to accommodate. They further state that they did provide reasonable accommodations for Turowski, and thus that he fails to establish the fourth element of the prima facie case.

Defendants contend that they provided Turowski two accommodations that omitted essential functions of Turowski's job; the requirements that security chauffeurs: (1) carry a gun, and (2) be flexible regarding scheduling.

First, Defendants assert that carrying a gun was an essential function of Turowski's position because the role of the security chauffeur was to protect May, a high net worth individual whose person and family would likely be the subject of criminal plots. Security chauffeurs for May normally carried firearms. Furthermore, Defendants contend

that Turowski's mental faculties post-accident were such that he was unable to exercise the sound judgment and quick-thinking necessary to operate a firearm effectively and safely to protect the person or people he was driving. Turowski counters that carrying a gun was not an essential function because it is not in the written job description for the security chauffeur position. Additionally, he asserts that there is another security chauffeur who does not have a gun permit.

Second, Defendants contend that scheduling flexibility was an essential function of Turowski's job because, by necessity, the schedule of the security chauffeur depended on the schedule of the person he was assigned to drive. Thus, the security chauffeur's schedule changed as that person's schedule changed. Turowski responds that scheduling flexibility was not in the written job description.

The Court finds no genuine issue in dispute under the circumstances of this case with regard to whether scheduling flexibility is an essential function of the job of a security chauffeur. Turowski fails to show that scheduling flexibility in chauffeuring May and his family to where they need to go at any time, as had been part of

his job duties before his injury, is not a requirement of his employment. Thus, to accommodate Turowski by allowing him to maintain a rigid schedule would be to eliminate an essential function of his job. See Canales-Jacobs, 640 F. Supp. at 500 ("[S]ummary judgment may be granted where the proposed accommodation would omit an essential function of the job."). In view of this determination, the Court need not address the question as to whether carrying a firearm is also an essential function of Turowski's security chauffeur's position.

Defendants further assert that, in any event, they provided reasonable accommodations to Turowski in that: (1) they held his position open for him for nine months while he was recovering from his TBI; (2) they relaxed a general responsibility of the job to carry a firearm; (3) they provided a BlackBerry device because he could no longer hear well enough to use a cell phone on the job; (4) they allowed Turowski to commence work gradually after the accident; and (5) they refrained from firing or disciplining Turowski when he did not report to work on two occasions without calling in. Turowski responds that (1) holding his position open is irrelevant and is not required by any statute or contract; (2) Turowski carried the gun

for a time until his physician found out he was doing so and forbade it; (3) the BlackBerry did not function and Turowski did not need it to communicate with his supervisors anyway; (4) Turowski's part-time schedule, at five hours a day three days per week, was essentially the same as his full-time schedule prior to the accident, and is therefore not an accommodation; and (5) Turowski's failure to call in was not a problem for Defendants and thus tolerating this behavior is not an accommodation.

The Court is not persuaded that Turowski's response to Defendants' list of reasonable accommodations raises a genuine issue of material fact as to whether Defendants reasonably accommodated Turowski's disability. The first, second, third, and fifth responses do not allege that Defendants did not provide the accommodation listed, but that the accommodation was either irrelevant or ineffective. As to the fourth, there is no disagreement between the parties that Turowski worked a reduced schedule for several months when he first returned to the job. Thus, the Court finds that Defendants provided reasonable accommodations to Turowski. The Court further finds that no reasonable juror could find that Turowski could perform the essential functions of his position with or without

accommodation. Thus, Turowski cannot establish a prima facie case of failure to provide reasonable accommodation under the ADA. Accordingly, Defendants' motion for summary judgment with regard to Turowski's reasonable accommodation claim is GRANTED.

B. DISCRIMINATORY TERMINATION

Ability to perform an essential function of a job with or without reasonable accommodation is the third requirement for a prima facie case of discriminatory termination. See Shepheard, 577 F. Supp. 2d at 679 (granting summary judgment on a discriminatory termination claim because the plaintiff failed to establish that she could perform the essential functions of her position with or without a reasonable accommodation). Turowski failed to establish a prima facie case of discriminatory termination because, as discussed above, he did not meet his burden of proving he could perform the essential functions of his position with or without a reasonable accommodation. Accordingly, Defendants' motion for summary judgment with regard to the discriminatory termination claim is GRANTED.

C. INDIVIDUAL LIABILITY UNDER NYSHRL AND NYCHRL

Because individual liability under NYSHRL and NYCHRL is dependent upon the liability of the corporate or

institutional employer, the Court finds that Turowski fails to make out a claim under NYSHRL or NYCHRL with respect to the individual defendants. Accordingly, Defendants' motion for summary judgment with regard to Turowski's claims under NYSHRL and NYCHRL is GRANTED.

## IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that motion for summary judgment (Docket No. 27) of defendants Triarc Companies, Inc., Peter W. May, and John R. Bender is GRANTED.

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**

Dated: New York, New York
4 January 2011

VICTOR MARRERO
U.S.D.J.